NOT FOR PUBLICATION (Doc. Nos. 723, 725, 727, 729, 733, 752, 753, 754, 757, 844)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| IN RE PAULSBORO DERAILMENT CASES | Master Docket No. 13-784 (RBK/KMW) |
| | 12-7468 (Breeman) (Doc. No. 143) |
| | 12-7747 (Lord) (Doc. No. 139) |
| | 13-3350 (Everingham) (Doc. Nos. 106, 107) |
| | 13-3244 (Morris) (Doc. No. 94) |
| | 13-4569 (Johnson) (Doc. No. 102) |
| | 13-5763 (Truluck) (Doc. Nos. 115, 117, 143) |
| | 13-7410 (Smith) (Doc. No. 86) |
| | **OPINION** |

**KUGLER**, United States District Judge:

This matter arises from the train derailment in Paulsboro, New Jersey, which caused the release of the toxic chemical vinyl chloride into the water and air. Presently before the Court are the Motions of Defendants CSX Transportation, Inc. ("CSX"), Norfolk Southern Railway Company ("Norfolk Southern"), and Consolidated Rail Corporation ("Conrail") (collectively

"Defendants") for Summary Judgment as to Plaintiffs Ryan Ragone, Bryan Everingham, and Marlo Johnson, and for Partial Summary Judgment as to Plaintiffs Alice Breeman, Michelle Truluck, Abdeslam Sahla, Robert Van Fossen, Zena Custis, and Ronald Morris (collectively "Plaintiffs").[1] Specifically, Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56 on Plaintiffs' claims for medical monitoring and "fear of cancer." Also before the Court is Defendants' Motion to Strike the responses and counterstatement of facts as to Plaintiffs Truluck and Sahla. For the reasons expressed herein, Defendants' Motions for Summary Judgment and Partial Summary Judgment are **GRANTED**, and Defendant's Motion to Strike is **DENIED**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The basic facts of this case have been set forth in numerous Opinions issued by the Court over the past nearly three years of litigation. Thus a short recitation of the facts material to this particular dispute will provide the setting for the instant motions.

On November 30, 2012, a train derailed while crossing the Paulsboro Moveable Bridge (the "Paulsboro Bridge"), a "swing bridge" which can be positioned either to permit water traffic to travel along the Mantua Creek or rail traffic to pass over the Mantua Creek. When the train derailed, a car carrying vinyl chloride was breached, resulting in the release of over 20,000 gallons of the chemical. Plaintiffs here either lived and/or drove through Paulsboro on the morning of the derailment (Defendants' Statement of Undisputed Material Facts ("SMF") ¶ 3 as to Truluck),[2] or were first responders who arrived near the accident site on the morning of the derailment (Defs.' SMF ¶ 3 as to Van Fossen; Defs.' SMF ¶ 3 as to Everingham), assisted in

---

[1] Defendants have filed nine separate motions; one as to each Plaintiff. Due to the similarity of the issues, the Court will address all motions in this single Opinion.

[2] Defendants' SMF are identical as to Truluck, Sahla, Breeman, Morris, and Custis, except as to some citations to the record concerning the individual Plaintiffs.

evacuating residents from their homes on the morning of the derailment (Defs.' SMF ¶ 3 as to Ragone), or worked near the derailment site in the days following the incident (Defs.' SMF ¶ 3 as to Johnson).

For the purposes of this motion, the parties, except Truluck and Sahla, agree that Plaintiffs may have been exposed to some amount of vinyl chloride. (See, e.g. Defs.' SMF ¶ 4 as to Johnson.) Truluck and Sahla vehemently assert that there is "overwhelming" evidence of their exposure to vinyl chloride, (Truluck Resp. to Defs.' SMF ¶ 4; Sahla Resp. to Defs.' SMF ¶ 4), and they each submit a Counterstatement of Material Facts, 41 and 42 paragraphs-long, respectively, to prove their points. (Doc. Nos. 797, 798.) These Counterstatements are filled with witness descriptions of the "vapor cloud" that resulted from the spill and the odor that permeated the air, citations from various agencies that assessed the levels of vinyl chloride in the air at the site and surrounding areas, agency reports including information on the health effects of vinyl chloride, facts relating to the whereabouts of these Plaintiffs at the time of and shortly after the release of chemicals, and facts concerning Plaintiffs' symptoms.[3]

Plaintiffs Morris, Breeman, Custis, Truluck and Sahla assert claims for medical monitoring. (See Morris Compl. (Count IV); Breeman First Am. Compl. (Count I); Custis Third Am. Compl. (Count IV); Truluck Second Am. Compl. (Count I).) First Responder Plaintiffs Johnson, Everingham, Van Fossen, and Ragone assert claims only of negligence and gross negligence, (see Everingham Compl., Ragone Compl., Johnson Am. Compl.) but seek damages for the cost of medical monitoring. Plaintiffs also seek damages for emotional distress due to

[3] These Counterstatements are the subject of Defendants' Motion to Strike. As the claims for medical monitoring and fear of cancer fail without expert reports, see infra, Section III, the disagreement about Plaintiffs' level of exposure becomes immaterial. Therefore, the Motion to Strike will be denied.

fear of developing cancer in the future.[4] Defendants move for summary judgment as to these claims. As to Everingham, Ragone, and Johnson, Defendants also argue that summary judgment is appropriate on their negligence claims because they cannot prove any physical injuries as a result of the derailment. Plaintiffs rely on the reports of medical experts Dr. Osinubi (Morris, Breeman, Truluck, and Sahla), Dr. Cohen (Custis), and Dr. Laumbach (Johnson, Everingham, Van Fossen, and Ragone). While the instant motions were pending, Defendants filed motions in limine to exclude these experts, which the Court granted on August 6, 2015. (Doc. No. 916.)

## II. LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The substantive law governing the dispute will determine which facts are material, and only disputes over those facts 'that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Oquendo v. Bettcher Indus., Inc., 939 F. Supp. 357, 361 (D.N.J. 1996) (quoting Anderson, 477 U.S. at 248). When the Court weighs the evidence presented by

[4] Although neither Plaintiff Sahla nor Custis have asserted a claim for fear of cancer in their Complaints or otherwise in the course of discovery, they argue in their opposition briefs, in response to an argument that Defendants do not make, that they are seeking and entitled to damages for fear of cancer. The Court notes that a plaintiff may not raise new claims for the first time in opposition to a motion for summary judgment. See Bell v. City of Philadelphia, 275 Fed. App'x 157, 160 (3d Cir. 2008). Likewise, this Court has held that a plaintiff may not expand his claim in opposition to a motion for summary judgment. Carlson v. Twp. of Lower Alloways Creek, No. 06-3779, 2009 WL 2496523, at *4-5 (D.N.J. Aug. 12, 2009). Nevertheless, to the extent that these Plaintiffs are asserting a fear of cancer claim, the Court will analyze it on the merits.

the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

If the party seeking summary judgment makes this showing, it is left to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 Fed. App'x 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the fact finder, not the district court. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. DISCUSSION

Plaintiffs assert two types of claims or requests for relief relating to the future diseases or medical conditions that may result from their exposure to vinyl chloride. The Court will address these claims in turn, followed by a discussion of the first responders' claims for negligence.

### A. Medical Monitoring

Damages for medical monitoring are appropriate where a plaintiff might not exhibit a physical injury, but nevertheless requires medical testing as a proximate result of a defendant's negligent conduct. Ayers v. Twp. of Jackson, 106 N.J. 557, 600 (1987). A plaintiff must "demonstrate, through reliable expert testimony predicated upon the significance and extent of exposure to chemicals, the toxicity of the chemicals, the seriousness of the diseases for which individuals are at risk, the relative increase in the chance of onset of disease . . . , and the value of early diagnosis." Theer v. Philip Carey Co., 133 N.J. 610, 626 (1993) (quoting Ayers, 106 N.J. at 606). The risk of injury need not be quantified to merit medical surveillance damages; however, the plaintiff must establish that the risk of serious disease is "significant." Ayers, 106 N.J. at 599-600; see also Campo v. Tama, 133 N.J. 123, 131 (1993) (awarding medical monitoring damages to a plaintiff with a "fifty- to seventy-five-percent chance of suffering a recurrence of cancer" due to the delay resulting from defendant doctor's malpractice). In the case of toxic exposure, "medical-surveillance damages may be awarded only if a plaintiff reasonably shows that medical surveillance is required because the exposure caused a distinctive increased risk of future injury." Theer, 133 N.J. at 627. Such damages are only available to plaintiffs who have "experienced direct and hence discrete exposure to a toxic substance." Id. at 628. Importantly, these elements must be demonstrated "through reliable expert testimony." Ayers, 106 N.J. at 606.

This Court has excluded the experts that Plaintiffs rely upon with respect to this claim. Without any expert testimony, a claim for medical monitoring cannot survive. Id. Plaintiffs offer no evidence that they were exposed to a significant amount of vinyl chloride, that their increased risk of future disease is "significant" or "distinct," or that medical monitoring is reasonable or necessary. Thus, summary judgment will be granted in favor of Defendants as to all of Plaintiffs' claims for medical monitoring.

**B. Emotional Distress—Fear of Cancer**

To recover for an emotional distress claim stemming from fear of cancer, a plaintiff must show that (1) he has suffered a physical injury as a result of the chemical exposure, and (2) that the fear of the future disease is reasonable. Denisco v. Boardwalk Regency Corp., No. 10-3612, 2013 WL 179484, at *16 (D.N.J. Jan. 16, 2013) (citing Theer v. Philip Carey Co., 259 N.J. Super. 40, 50 (App. Div. 1992), rev'd on other grounds, 133 N.J. 610 (1993)) ("[I]f there is no physical injury and the emotional distress is only that generally arising from the knowledge that a person has been tortiously exposed to a toxic substance, there can be no recovery."). Furthermore, where there is a physical injury, a plaintiff must demonstrate that: (1) he is currently suffering from serious fear or emotional distress or a clinically diagnosed phobia of cancer; (2) the fear was proximately caused by exposure to the chemical; (3) such fear is reasonable; and (4) Defendants are legally responsible for his exposure to the chemical. Devlin v. Johns-Manville Corp., 202 N.J. Super. 556, 563 (L. Div. 1985). Where exposure has not caused any physical injury, a plaintiff may still recover on such a claim if he can show that his emotional distress is "severe, substantial and tantamount to physical injury." Theer, 259 N.J. Super. at 50.

The Court will discuss the fear of cancer claim as to each Plaintiff.

**1. Ryan Ragone**

Ragone was a first responder who alleges that he was exposed to vinyl chloride while evacuating Paulsboro residents from their homes on the morning of the derailment. Indeed, he testified that he saw a "plume," and had a "sweet, sugary, dry taste" in his mouth. (Ex. C to Defs.' Mtn., Ragone Dep. 45:7-22.) He developed watery eyes and nasal discharge while on the scene, (id. 48:8-24), and a "little bit of . . . a cough" that night, (id. 57:2-10), but these symptoms subsided immediately, and he never sought medical attention (id. 56). Ragone does not have any other symptoms that he attributes to his exposure. (Id. 57:11-13.) Plaintiff does not dispute this evidence, or offer any other evidence of physical injuries.

Ragone testified that he is concerned about his future and the "long-term effects" of exposure. (Id. 64:1-11.) He has not discussed his concerns with any medical professionals. (Id. 64:12-15.) Since there is no evidence whatsoever of any compensable physical injuries to Ragone, to defeat summary judgment on his fear of cancer claim, he must meet the high standard of showing that his emotional distress is "severe" and "substantial," and "tantamount to physical injury." The only evidence of Ragone's distress are his statements in his deposition that he has some concerns, which he has not addressed with any medical professionals. Plaintiff has not offered any other proofs. Therefore, his fear of cancer claim must fail. See Maertin v. Armstrong World Indus., Inc., No. 95-2849, 1998 WL 896704, at *4 (D.N.J. Dec. 16, 1998) (opining that "[i]t is unfortunate that people are led to worry [and] lose sleep . . . but these are normal reactions to learning that one has been tortiously exposed to a toxic substance" and does not constitute severe emotional distress).

**2. Marlo Johnson**

Johnson was a member of the Gloucester County Sherriff's Department who was stationed at a regular post at Paradise Road, near the derailment site, for the first time on December 4, 2012—four days after the derailment. (Ex. D. to Defs.' Mtn., Johnson Dep. 41:1-11, 50:10-23.) He did not visit or go near the derailment site before then. (Id. 40:24-41:6.) Johnson did not experience any symptoms while at work on December 4. (Id. 55:13-17.) He first noticed physical symptoms "a few days later," which consisted entirely of an inability to sleep. (Id. 55:18-56:2.) Prior to the derailment, Johnson had been diagnosed with sleep apnea. (Id. 71, 75-76.) At some point in late 2014, approximately two years after the derailment, Johnson also developed a urinary tract infection, which he attributes to working at that post on December 4, 2012 because "it was just mighty odd that I never had anything like that before in my life." (Id. 57:22-58:20.)

"As a general proposition, expert testimony is required to demonstrate causation in toxic tort cases." Leese v. Martin, No. 11-5091, 2013 WL 5476415, at *7 (D.N.J. Sept. 30, 2013). Plaintiff presents no evidence linking his time spent near the derailment site four days after the spill to his subsequent difficulty sleeping or his urinary tract infection. In fact, Johnson's treatment for sleep issues prior to the derailment tends to disprove that his difficulty sleeping relates to his exposure to vinyl chloride. No expert testimony connects his symptoms to his exposure, as is necessary in order to prove causation when a plaintiff has presented no evidence that his level of exposure to vinyl chloride is known to cause the specific symptoms he endures. See id. (finding that plaintiffs could not establish causation where they only produced evidence that exposure to the chemical in some quantity can have harmful effects and that plaintiff suffered injuries after exposure to an unspecified quantity of the chemical, because the "inferential leap" needed to prove causation did not "fall within the common knowledge of the

reasonable juror"). Therefore, Johnson cannot prove that he suffered physical injuries as a result of the derailment.

Like Ragone, absent physical injury, Johnson's fear of cancer claim cannot succeed because he cannot show that his emotional distress is "severe" and "substantial," and "tantamount to physical injury." No evidence has been presented that would establish the requisite level of distress. In fact, no evidence has been presented that Johnson is even demanding damages for emotional distress at all. (See Ex. B. to Defs.' Mtn., Johnson Interrogatories, No. 12) (asking for a description of mental health conditions "[i]f you are claiming that your alleged exposure to vinyl chloride caused compensable mental anguish, distress, suffering or other similar forms of mental health conditions," and answering "N/A").[5] Accordingly, to the extent that Johnson seeks damages for fear of cancer relating to his alleged exposure, this claim must fail.

**3. Bryan Everingham**

Everingham is a first responder who was deployed to various sites around the derailment on the day of the incident. He testified that he did not suffer any symptoms on that day. (Ex. D to Defs.' Mtn., Everingham Dep. 194:4-14.) At some point in December 2012 or January 2013, Everingham began to experience headaches and sleeplessness that he attributes to his exposure, for which he did not seek medical treatment. (Id. 194:20-195:15, 196:8-19.) Plaintiffs do not offer any evidence to the contrary, or any evidence linking his exposure to the symptoms he alleges.

For the same reasons that Johnson cannot establish physical injuries resulting from the derailment, neither can Everingham. He has simply offered no proof that his headaches and

[5] Given this lack of indication that Johnson is alleging "fear of cancer," it is unclear why Defendants are moving for summary judgment on this point.

sleeplessness that began approximately one month after the derailment were caused by his exposure to vinyl chloride. Likewise, Plaintiff cannot meet his burden of proof with respect to his fear of cancer claim. The only evidence of his alleged emotional distress is his answer to an interrogatory that he has "wrestled with the stress and mental fatigue associated with my exposure to vinyl chloride, the possible deadly consequences, and repercussions to my family." (Ex. B to Defs.' Mtn., Everingham Interrogatories, No. 12.) This single statement cannot show that his emotional distress is "severe" or "substantial." See Maertin, 1998 WL 896704, at *4 ("A claim for mere 'aggravation, embarrassment, unspecified number of headaches, and sleep loss' does not rise to this level of severe emotional distress.") (quoting Ironbound Health Rights Advisory Comm'n v. Diamond Shamrock Chems. Co., 243 N.J. Super 170, 174 (App. Div. 1990)).

**4. Sahla, Custis, Truluck, Breeman, Morris, Van Fossen**

For the purposes of this motion, Defendants do not contest these Plaintiffs' physical injuries. As such, Plaintiffs must demonstrate that they are suffering from a serious fear or emotional distress, and that there is at least a genuine issue of fact as to whether Plaintiffs' fears are reasonable. See Devlin, 202 N.J. Super. at 563.

With respect to Sahla and Custis, who have not raised this claim anywhere except in their opposition brief, see supra, note 4, their claims cannot survive because they present no evidence that they are experiencing emotional distress. Custis sites to Dr. Cohen's expert reports and to the office notes of Dr. Akshay Dave to show that she "fears contracting cancer on account of such exposure." (Custis Br. in Opp'n at 21 & n.6.) But Dr. Cohen's report has been excluded, and in any event is silent on the issue of fear of cancer or emotional distress. And although Plaintiff cites to Dr. Dave's office notes, she does not include the notes as an exhibit to her

motion. Similarly, Sahla does not point the Court to any evidence that he is suffering from emotional distress due to his fear of cancer or any other disease. This failure of proof is fatal to Custis's and Sahla's fear of cancer claims.

The claims of Truluck, Breeman, and Morris for fear of cancer also cannot survive summary judgment. This Court has excluded Plaintiffs' expert, who would have opined as to their risk of developing future diseases such as cancer, because no scientific evidence exists that acute exposure to vinyl chloride causes such illnesses in humans. Nontheless, Truluck, Breeman, and Morris attempt to introduce the very studies that their expert relied upon, which the Court rejected, in order to show that their fears are reasonable. While the Court agrees with Plaintiffs that they need not demonstrate that they are likely to develop cancer to a "reasonable medical probability," they still cannot defeat summary judgment without showing a genuine dispute of fact as to the reasonableness of their fears. See Mauro v. Raymark Indus., Inc., 116 N.J. 126, 137-39 (1989) (differentiating between a claim for the enhanced risk of developing a disease, which requires a degree of "reasonable medical probability," and a claim for emotional distress stemming from fear of disease, and recognizing "the right of a plaintiff who has sustained physical injury because of exposure to toxic chemicals to recover damages for emotional distress based on a reasonable concern that he or she has an enhanced risk of further disease"). Where, as here, a reasonable jury could not find that Plaintiffs' fears are reasonable, a genuine dispute of material fact does not exist. Anderson, 477 U.S. at 248.

As to Van Fossen, his expert has also been excluded. Unlike Truluck, Breeman, and Morris, Van Fossen does not even attempt to offer any other evidence whatsoever relating to his fear of cancer. In addition, Van Fossen does not submit any proof that he is actually suffering from a "serious fear or emotional distress." He alleges only that his "[e]xposure has caused

periods of depression and mood swings." (Ex. B. to Defs.' Mtn., Van Fossen Interrogatories, No. 12.) His claim also must fail.

Just because a fear is understandable does not make it compensable under the law. See Ironbound, 243 N.J. Super. at 174. No matter how authentic Plaintiffs' fears may be, they are simply unreasonable as a matter of law. See Williamson v. Waldman, 150 N.J. 232, 250 (1997) (finding plaintiff's fear was "idiosyncratic" and thus unreasonable because "it exceeded the emotional distress that would be experienced by a reasonable and well-informed person") (emphasis added); cf. Devlin, 202 N.J. Super. at 561 (reasoning that plaintiffs' fear was not "idiosyncratic" in an asbestos exposure case where plaintiffs were told by their doctors that they had an increased risk of cancer, and they had witnessed their friends and co-workers in similar situations succumb to the disease).

**C. Negligence as to Ragone, Everingham, and Johnson**

The Court thus far has concluded that neither Ragone, Everingham, nor Johnson can establish physical injuries resulting from their exposure to vinyl chloride. In New Jersey, the elements of a cause of action for negligence are: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; (3) proximate cause; and (4) actual damages. Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008). "The tort of negligence is not committed unless and until some damage is done." White v. Mattera, 175 N.J. 158, 166 (2003) (quoting Muller Fuel Oil Co. v. Ins. Co. of N. Am., 95 N.J. Super. 564, 579 (App. Div. 1967)). Thus, the absence of an injury will preclude a negligence claim, even where there is a breach of duty. Player v. Motiva Enters. LLC, No. 02-3216, 2006 WL 166452, at *9 (D.N.J. Jan. 20, 2006).

Gross negligence differs from negligence in terms of "degree rather than . . . quality," Smith v. Kroesen, 9 F. Supp. 3d 439, 442 (D.N.J. 2014) (quoting Fernicola v. Pheasant Run at

Barnegat, 2010 WL 2794074, at *2 (N.J. Super. Ct. App. Div. July 2, 2010)), requiring proof of "wanton or reckless disregard for the safety of others." Griffin v. Bayshore Med. Ctr., 2011 WL 2349423, at *5 (N.J. Super. Ct. App. Div. May 6, 2011) (internal citations omitted). This is a more exacting standard than ordinary negligence.

Since Plaintiffs cannot prove any damages, an essential element of a negligence claim, summary judgment will be granted in favor of Defendants as to Ragone, Everingham, and Johnson on their negligence and gross negligence claims.[6]

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment and Partial Summary Judgment are **GRANTED**. Defendants' Motion to Strike is **DENIED**. An appropriate Order shall issue.

Dated: 8/18/2015

s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

[6] The Court notes that Van Fossen has also only asserted claims for negligence and gross negligence, but as his physical injuries are not disputed, his claims for negligence and gross negligence still stand.